IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALFRED EVANS,<br><br>Defendant. | Criminal Action No. 19-00061-CFC |

Christopher L. de Barrena-Sarobe, ASSISTANT UNITED STATES ATTORNEY, Wilmington, Delaware

   *Counsel for United States*

Alfred Evans

   *Pro Se Defendant*

**MEMORANDUM OPINION**

August 24, 2021
Wilmington, Delaware

*[signature]*
COLM F. CONNOLLY
CHIEF JUDGE

Pending before me is Defendant Alfred Evans's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i). D.I. 49. Section 3582(c)(1)(A)(i) empowers the Court to modify a term of imprisonment when "extraordinary and compelling reasons warrant such a reduction[.]" Evans contends that his sentence should be reduced because his preexisting health conditions in combination with the COVID-19 pandemic constitutes an extraordinary and compelling circumstance. D.I. 61 at 2. The Government opposes Evans's motion. *See* D.I. 56.

**I.      BACKGROUND**

Evans is 41 years old. He was sentenced to 115 months of incarceration for possession of cocaine with intent to distribute. Evans has been detained since March 25, 2019. D.I. 40 ¶¶ 1–2. The Federal Bureau of Prisons (BOP) projects that with good time credits Evans would be released on May 23, 2027. D.I. 56 at 1.

**A.      Evans's Health**

Evans has preexisting conditions that increase his risk of series illness from COVID-19. Evans is 67 inches tall and weights 223 lbs. D.I. 57 at 11. Thus, Evans has a body mass index (BMI) of 34.9, making him obese. D.I. 57 at 12. Evans is also a former smoker. D.I. 57 at 11. Evans tested positive for COVID-19

in late 2020. D.I. 57, at 26–28. He reported that he felt chest pain when sneezing after he had COVID-19, but he did not experience any other symptoms or require medical treatment. D.I. 57 at 11, 20, 26–27. Subsequently, Evans was vaccinated against COVID-19. He received his first does of the Pfizer vaccine on March 23, 2021 and received the second dose on April 13, 2021. D.I. 57 at 66.

### B. Facility Conditions

Evans is currently housed at FCI Fort Dix. D.I. 56 at 1. The Government says there have been "extensive changes to [BOP] operations" to mitigate the risks of COVID-19 transmissions in BOP institutions. D.I. 56 at 3–4 (citing *BOP Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Aug. 23, 2021)). As of this date, the BOP's Coronavirus information website shows that Fort Dix has no inmates currently with COVID-19, two staff members currently with COVID-19, two inmates who died from COVID-19, 1,687 inmates who have recovered from COVID-19, and 95 staff members who have recovered from COVID-19. *Covid-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Aug. 23, 2021).

### II. ANALYSIS

In general, a district court cannot modify a term of imprisonment once it has been imposed unless a defendant is eligible for a reduction of sentence pursuant to

2

18 U.S.C. § 3582(c). *United States v. Mainor*, 725 F. App'x 85, 86 (3d Cir. 2018). Section 3582 was amended in 2018 as part of the First Step Act. Before the enactment of the First Step Act, only the Director of the Bureau of Prisons could file a motion seeking a sentence reduction, sometimes also called "compassionate release." Now a motion may be filed by either the Director of the Bureau of Prisons or the defendant, except the defendant may not file a motion until "after [he or she] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, Evans has filed the motion on his own behalf, and the Government concedes that Evans has met the exhaustion requirement. D.I. 56 at 5 n.4.

Although the First Step Act changed the process by which inmates can request a reduced sentence, it did not alter the statutory standards that must be met for that request to be granted. The Sentencing Reform Act of 1984 established the statutory standard for reducing a sentence. Under that statute, a Court may reduce the term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction," and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Reform Act did not define what constitutes

3

"extraordinary and compelling reasons," instead directing the Sentencing Commission to promulgate policy statements that do so. 28 U.S.C. §§ 994(a)(2)(C) and (t).

The policy statement of the Sentencing Commission that governs sentence reduction can be found at U.S.S.G. § 1B1.13. Under that policy statement, a defendant is eligible for a sentence reduction if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court determines that three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2018).

### A.  Extraordinary and Compelling Reasons

U.S.S.G. § 1B1.13 was first issued in November 2006 and its "Application Notes" section has been amended substantively at least three times since then. The Application Notes contain four categories of extraordinary and compelling reasons: (1) "Medical Condition of the Defendant," (2) "Age of the Defendant," (3) "Family Circumstances," and (4) "Other Reasons." U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1.

4

Only the "Medical Condition of the Defendant" reason is potentially applicable here. The "Age of the Defendant" reason requires Evans to be at least 65 years old, which he is not. *Id.* at cmt. 1(B). "Family Circumstances" requires the death or incapacitation of either: (1) the caregiver of the defendant's minor children or (2) the defendant's spouse or registered partner, neither or which Evans alleges. *Id.* at cmt. 1(C). Finally, the catchall "Other Reasons" requires a determination by the Director of the Bureau of Prisons that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with," the reasons already identified. *Id.* at cmt. 1(D). Because this motion was filed by Evans on his own behalf and not by the Bureau of Prisons, the Director has made no such determination, so the catchall provision does not apply here.

The Application Notes divide the "Medical Condition of the Defendant" into two subcategories: terminal illness and non-terminal illness. Specifically, they state that the medical condition of the defendant constitutes an extraordinary and compelling reason if:

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia. [or]
> (ii) The defendant is—

5

>> (I) suffering from a serious physical or medical condition,
>> (II) suffering from a serious functional or cognitive impairment, or
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1(A) (U.S. Sent'g Comm'n 2018).

To understand the Application Notes, it helps to consider the reasons the Sentencing Commission gave for its last substantive amendment to the Application Notes in 2016. Before 2016, the Application Notes required a "terminal illness" but did not elaborate on the meaning of the term. Amend. 799 to U.S. Sent'g Guidelines Manual § 1B1.13. 1 (U.S. Sent'g Comm'n 2016), available at https://guidelines.ussc.gov/ac/799. Now, however, the Application Notes define "terminal illness" as "a serious and advanced illness with an end of life trajectory," and they explain that a probability of death within a specific time period "is not required." *See* U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1 (U.S. Sent'g Comm'n 2018). As the Sentencing Commission explained, these changes were made after reviewing the BOP's internal criteria for implementing § 3582(c)(1)(A)

6

and hearing testimony and public comment on the challenges associated with diagnosing terminal illness.[1] Specifically, the Sentencing Commission stated:

> [W]hile an end-of-life trajectory may be determined by medical professionals with some certainty, it is extremely difficult to determine death within a specific time period. For that reason, the Commission concluded that requiring a specified prognosis (such as the 18-month prognosis in the Bureau of Prisons' program statement) is unnecessarily restrictive both in terms of the administrative review and the scope of eligibility for compassionate release applications. For added clarity, the amendment also provides a non-exhaustive list of illnesses that may qualify as a terminal illness.

Amend. 799 to U.S. Sent'g Guidelines Manual § 1B1.13. 1 (U.S. Sent'g Comm'n 2016).

For non-terminal illnesses, the Sentencing Commission explained:

> [T]he amendment provides three broad criteria to include defendants who are (i) suffering from a serious condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating health because of the aging process, for whom the medical condition substantially diminishes the defendant's ability to provide self-care within a correctional facility and from which he or she is not

---

[1] In the Sentencing Commission's February 17, 2016 Public Hearing on Compassionate Release, Dr. Brie Williams, Associate Professor of Medicine, Division of Geriatrics, University of California, San Francisco testified about the difficulty doctors have of predicting an exact time period until death for a terminal illness. *Public Hearing on Compassionate Release & Conditions of Supervision*, United States Sent'g Comm'n 154-162 (Feb. 17, 2016), transcript available at https://www.ussc.gov/sites/default/files/Transcript_6.pdf.

7

> expected to recover. The primary change to this category is the addition of prong (II) regarding a serious functional or cognitive impairment. This additional prong is intended to include a wide variety of permanent, serious impairments and disabilities, whether functional or cognitive, that make life in prison overly difficult for certain inmates.

Amend. 799 to U.S. Sent'g Guidelines Manual § 1B1.13. 1 (U.S. Sent'g Comm'n 2016).

In his motion, Evans does not claim that he is currently diagnosed with a terminal illness or a "serious" non-terminal illness that "substantially diminishes" his ability to provide self-care, as required by Sentencing Commission's policy statement. Instead, Evans contends that his obesity and prior history of smoking in combination with the COVID-19 pandemic create a high risk that he will develop a serious or terminal illness should he contract the virus again. D.I. 61 at 2. The issue is whether this reason satisfies or is consistent with the extraordinary and compelling standard laid out in U.S.S.G. § 1B1.13.

Applying the standards set out in U.S.S.G. § 1B1.13, I find that Evans's preexisting conditions fall short of showing a risk of becoming "seriously ill" from COVID-19. The Third Circuit has held that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Roeder*, 803 F. App'x 157 n.16 (3d

8

Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."). Evans previously tested positive for COVID-19 and only experienced mild symptoms. This prior case should offer Evans some protection against reinfection. More importantly, Evans is now vaccinated against the virus. The Pfizer vaccine that Evans received is, as Evans himself acknowledges, "highly effective" at preventing death and serious illness from COVID-19. D.I. 61 at 6; *see also Pfizer-BioNTech COVID-19 Vaccine Overview and Safety*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.html (last visited Aug. 23, 2021). Because Evans is vaccinated against the disease, COVID-19 is not an extraordinary and compelling risk to his health.

Accordingly, the Court finds that Evans has not identified an extraordinary and compelling reason for a sentence reduction.

### B. A Danger to the Community

Even if Evans had demonstrated an extraordinary and compelling reason for a sentence reduction, I would still deny his motion because he has failed to demonstrate that he is not a danger to the safety of the community, especially after considering the factors set forth in 18 U.S.C. § 3553(a). Evans has an extensive criminal record, including multiple felonies for drug sales. He has been convicted

9

of drug-related offenses on five different occasions. D.I. 40 ¶¶ 6, 89, 93, 113, 135. Additionally, Evans has sold drugs while on pretrial release and committed numerous probation violations. D.I. 40 ¶ 183, 93–135. Given this significant criminal history, incarceration for less than 30 months (a reduction of over 70% from his sentence of 115 months) would provide inadequate deterrence. *See* 18 U.S.C. § 3553(a)(2)(B). Evans's court-imposed sentence must be served to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment.

## III. CONCLUSION

For the reasons stated above, I will deny Alfred Evans's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A). D.I. 49.

The Court will enter an Order consistent with this Memorandum Opinion.